**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**DARLENE LOCKWOOD-CORNO,**

            **Plaintiff,**          **CIVIL ACTION NO. 8-12120**

     **vs.**            **DISTRICT JUDGE DAVID M. LAWSON**

**COMMISSIONER OF**          **MAGISTRATE JUDGE MONA K. MAJZOUB**
**SOCIAL SECURITY,**

            **Defendant.**
_____/

**REPORT AND RECOMMENDATION**

**I.**    **RECOMMENDATION:**    This Court recommends that Defendant's Motion for Summary Judgment (docket no. 11) be GRANTED, that Plaintiff's Motion for Summary Judgment (docket no. 8) be DENIED, and that Plaintiff's Complaint be dismissed, as there was substantial evidence on the record that Plaintiff remained capable of performing her past relevant work.

\*\*\*

**II.**    **PROCEDURAL BACKGROUND**

       Plaintiff protectively filed applications for Supplemental Security Income on June 24, 2004 and Disability Insurance Benefits on July 8, 2004, alleging that she had been disabled and unable to work since December 1, 1999 due to bipolar disorder, anxiety, high blood pressure and panic attacks. (TR 20, 47-49, 131-32, 320-23). The Social Security Administration denied benefits and income. (TR 38, 324-27). A requested *de novo* hearing was held on May 7, 2007 before Administrative Law Judge (ALJ) Regina Sobrino who subsequently found that the claimant was not entitled to a period of Disability and Disability Insurance Benefits or Supplemental Security Income because she was not under a disability at any time from December 1, 1999 through the date of the

1

ALJ's June 22, 2007 decision.  (TR 20, 25, 344).  The Appeals Council declined to review the ALJ's

decision and Plaintiff commenced the instant action for judicial review.  (TR 3-5).  The parties filed

Motions for Summary Judgment and the issue for review is whether Defendant's denial of benefits

was supported by substantial evidence on the record.

**III.    PLAINTIFF'S TESTIMONY, MEDICAL EVIDENCE AND VOCATIONAL EXPERT TESTIMONY**

      **A.    Plaintiff's Testimony and Reports**

Plaintiff was forty-one years old at the time of the administrative hearing.  (TR 47).  At the

time of the hearing Plaintiff lived with her boyfriend and her child in an apartment.  (TR 114, 348).

Plaintiff has been married three times and has four children.  (TR 228).  Plaintiff has a GED, some

college education and a variety of past work experience as set forth more fully below.  (TR 203,

349).  Plaintiff testified that she last worked in 2004 as a waitress[1].  (TR 349).  Plaintiff testified that

she quit due to problems she had with the manager, problems she had by not being able to follow

through on things and because she was never on time.  (TR 349).  Plaintiff testified that she has "a

hard time" being on time.  (TR 370).  Plaintiff testified that she has physical problems but she does

not have documentation for them.  (TR 350).  She testified that her family physician treats her for

high blood pressure and arthritis.  (TR 350).

Plaintiff testified that she can stand or walk for twenty to thirty minutes before she has to sit

and she can sit for about twenty minutes before she needs to stand.  (TR 350).  She alleges that she

cannot lift "heavy things."  (TR 351).  She testified that a couple of times a month her arthritis is bad

and she has trouble holding a pen or pencil or picking up coins.  (TR 351).  Plaintiff testified that

---

[1]The ALJ found, and the record shows, that Plaintiff had several temporary jobs "after the alleged onset date of disability, but did not engage in substantial gainful activity."  (TR 22).

she performs household chores like cooking, cleaning and laundry. (TR 351). She shops for groceries and she helps to take care of pets including a rabbit, turtle, bird and gerbil. (TR 352). She is able to drive and a few months prior to the hearing she had driven from Michigan to New Jersey to see her parents. (TR 352-53). Plaintiff has been able to attend her daughter's school occasionally. (TR 353). Plaintiff went by car to Florida in 2006; she was a passenger and did not drive on that trip. (TR 364). Plaintiff testified that she has panic attacks three to four times per month resulting in chest pain which feels like a heart attack. (TR 355-56). The attacks last a couple of hours. (TR 356). Plaintiff testified that when she has a change of medication she cannot function for at least a week. (TR 372-73). As an example, Plaintiff stated that since she has been prescribed Seroquel she is "flying all day long," she cleaned her house and mopped her floor with bleach "like six times in five days." (TR 373). Plaintiff reports that she used to love to read but now has difficulty reading due to a lack of concentration. (TR 106, 109, 129). She also reports needing reminders to take her medication. (TR 107).

Plaintiff's boyfriend and roommate, Daniel Castellano, testified at the hearing. (TR 20, 113, 355). He has known Plaintiff for the previous seven years, they have lived in the same household for the previous three years and in the last four years she has gone "downhill." (TR 356-57). He stated that she sometimes has a hard time getting dressed, she misplaces things and forgets things and she has a hard time finding places and remembering where to go. (TR 357). He testified that she starts household chores and forgets what she was doing; sometimes she comes back and finishes the chores, otherwise he finishes them. (TR 358). He described that she will intend to get something and will retrieve the wrong item instead. (TR 358-59). Mr. Castellano reports that Plaintiff reads almost every day. (TR 117). He quantified her panic attacks as "often." (TR 359). Mr. Castellano testified that he has not worked in six months because Plaintiff has panic attacks if

3

he is not with her.  (TR 360).  He testified that for about the past two and a half years, Plaintiff has been afraid to go out including to restaurants or friends' houses.  (TR 361).  He testified that Plaintiff is the primary caregiver for her child.  (TR 114, 359-60).  Mr. Castellano testified that Plaintiff has mood swings in which she would suddenly start crying and mood swings from sad to aggravated or very angry occurring four to five times per month and lasting from one to three days or ten to fifteen minutes.  (TR 361-62).  Mr. Castellano testified that Plaintiff's physical limitations with respect to lifting are not a problem, but she cannot "get along with most people," and he gave examples he had seen in Plaintiff's last job where she and her boss never got along.  (TR 370).

**B.    Medical Record**

The issues raised by Plaintiff's Motion for Summary Judgment are limited to her mental impairments.  The Court has reviewed the record in full and will limit its detailed discussion herein to evidence related to Plaintiff's mental impairments.  The record shows that Plaintiff treated at Saginaw County Community Mental Health Authority on November 28, 2000 and from March 2003 through July 28, 2003.  (TR 201, 210-25).  On February 21, 2003 Plaintiff underwent a psychiatric review with Peter T. Smith, M.D., psychiatrist.  (TR 203-07).  Dr. Smith noted that Plaintiff reported crying for the previous two weeks with fleeting thoughts of impulsivity but reported that she did not "feel" that she was depressed.  (TR 204).  He noted that Plaintiff reported that shopping seems to help her mood.  (TR 204).  Plaintiff reported that she had recently been treated with Prozac but was not taking any prescribed medication at the time of the evaluation.  (TR 205).  Dr. Smith diagnosed Plaintiff with Bipolar Disorder I, History of Polysubstance Dependence in sustained full remission and Nicotine Dependence.  (TR 206).  He assigned a GAF of 54, noting that the highest GAF in the past year was 85.  (TR 206).  Dr. Smith prescribed Lithium.  (TR 206).

On March 7, 2003 Dr. Smith noted that Plaintiff was showing signs of hypomanic behavior

4

and racing thoughts but she denied side effects from the Lithium.  (TR 221).  Dr. Smith added Ativan and Seroquel to Plaintiff's medication regime.  (TR 221).  On March 24, 2003 Plaintiff presented with a depressed mood.  (TR 219).  Dr. Smith noted that she reported some problems with concentration.  (TR 219).  Dr. Smith added Wellbutrin SR to Plaintiff's medications.  (TR 219-20).

On April 1, 2003 Plaintiff reported to emergency care with complaints of chest pain.  (TR 159-62).  Her blood pressure was 174/87.  (TR 160).  The attending physician noted that Plaintiff appeared to be "acutely anxious."  (TR 160).  Cardiac enzymes, an x-ray and a stress echo test were normal and negative.  (TR 160, 162, 168).  Her medications at that time were Lithium, Wellbutrin and amoxicillin.  (TR 159). On April 7, 2003 Dr Smith noted that Plaintiff's mood appeared to be mildly depressed, but her "[t]hought process was otherwise logical, coherent and goal directed."  (TR 218).  The doctor prescribed Lexapro.  (TR 218).  On April 23, 2003 Dr. Smith noted that Plaintiff was doing well on her current medications.  (TR 215).

On July 28, 2003 Dr. Smith noted that Plaintiff reported that she had gone to the hospital with severe dehydration and had an elevated Lithium level, but the doctor noted that he had no report of the same.  (TR 210).  The doctor noted that Plaintiff reported that she had been "somewhat forgetful" and would sometimes double up on her Lithium dose without knowing that she had done so.  (TR 210).  At that time, Plaintiff continued taking Klonopin and Lithium and Seroquel was discontinued.  (TR 224-25).

On May 18, 2004 Plaintiff reported to the emergency room for pain in her left hip as a result of a fall.  (TR 186).  While Plaintiff was in the emergency room she developed chest tightness.  (TR 179).  Her blood pressure was 196/114.  (TR 179).  A cardiac work-up was negative and an electrocardiogram was normal.  (TR 180, 187-88).  X-rays of the pelvis and both hips were normal.  (TR 186).  Plaintiff was discharged with Norvasc for blood pressure and Naprosyn.  (TR 180-81).

5

In September 2004 Plaintiff again reported to the emergency room with complaints of chest pain. (TR 172-78). The notes show that Plaintiff refused to stay for a complete work up. (TR 174).

On December 2, 2004 Plaintiff underwent a state agency psychological examination with George Prestrue, Ph.D., licensed psychologist. (TR 226-232). Plaintiff reported that she was taking Xanax and Klonopin prescribed by her general practice physician. (TR 227). Plaintiff also reported that she had been diagnosed with fibromyalgia and a herniated disc at L2 and L3. (TR 227). The Court notes that it does not find medical evidence of these diagnoses in the record. (TR 227). Dr. Prestrue noted that Plaintiff reported that she has two good friends who are emotional support for her. (TR 228). She reported that her "mind is racing all the time." (TR 226). Plaintiff reported that she has never been able to keep a job for very long. (TR 227). She reported that she usually quits when the job gets overwhelming for her and she gets "real manic." (TR 227). She reported having more chest pain when she is working. (TR 227). Plaintiff reported that she loves to read but she cannot read anymore because she cannot concentrate. (TR 229).

Dr. Prestrue reported that Plaintiff's stream of mental activity was very spontaneous and responses were generally reasonable and logical. (TR 230). She exhibited a fairly normal mood and did not exhibit significant depressive or manic symptoms during the evaluation. (TR 230). She did appear to be "mildly to moderately anxious and tense and significantly restless." (TR 230). Dr. Prestrue diagnosed Bipolar I Disorder (296.62) and Panic Disorder (300.01) and noted "R/O Generalized Anxiety Disorder." (TR 232). He assigned a GAF of 50 and concluded that Plaintiff is able to manage her own funds. (TR 232).

On December 21, 2004 Arthur F. Dundon, M.D., completed a Psychiatric Review Technique and a Mental Residual Functional Capacity Assessment. (TR 234-253). Dr. Dundon diagnosed Plaintiff with Bipolar Syndrome 12.04 Affective Disorder and Anxiety 12.06 evidenced by recurrent

6

panic attacks, he noted however, that the "attacks do not meet frequency requirement." (TR 237, 239). Dr. Dundon concluded that Plaintiff has mild restrictions in activities of daily living and maintaining social functioning, moderate difficulties in maintaining concentration, persistence or pace and no episodes of decompensation of extended duration. (TR 244). Dr. Dundon opined that Plaintiff was moderately limited in the ability to understand and remember detailed instructions, carry out detailed instructions and maintain attention and concentration for extended periods. (TR 248). All other areas were noted as "not significantly limited." (TR 248-49). Dr. Dundon noted in the narrative section that Plaintiff "[c]ould not understand/remember/carry out complex/technical instruction on a sustained basis- bipolar disorder, anxiety would have some problems maintaining attention and concentration. Could relate to others, adapt. Could not do complex, technical tasks. Retains ability to do simple tasks on a sustained basis." (TR 250).

On August 15, 2005, January 25, 2006 and October 2, 2006 Plaintiff presented to the hospital with complaints of chest pain. (TR 255-59, 260-63, 278-81, 302-10 ). Testing each time, including chest x-rays, EKG and cardiac enzymes, was normal. (TR 255, 261). Plaintiff's discharge diagnoses were nonspecific chest pressure, hypertension and bipolar disorder. (TR 255).

On September 21, 2005 Plaintiff underwent a Comprehensive Psychiatric Evaluation with Douglas L. Foster, M.D. (TR 283-85). Dr. Foster reported that Plaintiff's speech was logical and sequential and she was appropriately orientated to time, place and situation. (TR 284). He found "no signs currently of any thought process disorder." (TR 284). He noted that she "has difficulty expressing anger and expressing appropriately and directly." (TR 284). He diagnosed Bipolar Disorder presented as depression (296.45) and a GAF of 50. (TR 285).

On November 11, 2005 Dr. Foster reported that Plaintiff was "not doing well because she has come out of the anxiety and continued to have a lot of internal tension," but he noted that she

was "off the Xanax now and that is a plus." (TR 286). Dr. Foster added Paxil CR and Plaintiff continued on reduced BuSpar and increased Equetro. (TR 286). On February 6, 2006 Dr. Foster reported that Plaintiff wanted to see a therapist and that he was "recommending it" and told Plaintiff to call and get an external referral for a therapist. (TR 287). He reported that "[t]herapies are (sic) essential part of her improvement. She is not experiencing any adverse reaction from the medication." (TR 287).

On May 1, 2006 Dr. Foster noted that Plaintiff "continues to resist going to see her therapist and continues to hold on to her symptoms." (TR 288). Dr. Foster reported that he was not going to change Plaintiff's medication "because there is no reason to change the medication. What she experiences is what she considers as panic. What the panic is all about is the inability to express anger in any appropriate fashion." (TR 288). He reported that "it is a very psychological-driven illness that she has including the blood pressure, and she tells me how she feels and how hot she feels in her body and skin, but she would do nothing about getting the therapist to help her work these things out." (TR 288). Dr. Foster concluded that he will continue to see her but he is "going to insist on a therapist." (TR 288). On September 8, 2006 Dr. Foster noted that Plaintiff was having a difficult time "because she has not gone to see the therapist." (TR 289). He noted that she was "stable on medication, but still having a difficult time turning her brain off." (TR 289).

## C.    Vocational Expert Testimony

The Vocational Expert (VE) classified Plaintiff's past work as a cashier as light and unskilled, a payroll clerk and general clerical worker as sedentary and semi-skilled, a press operator as light and unskilled, a telemarketer as sedentary and unskilled, a waitress as light to medium and unskilled, and a manufacturing supervisor as medium and semi-skilled. (TR 366). Plaintiff confirmed that she had performed all of these jobs full time within the past fifteen years. (TR 366).

Plaintiff testified that her boss at the restaurant where she held her last waitress job was very lenient compared to her other jobs and she could perform her tasks at the time and in the manner that she wanted.  (TR 366).

The ALJ asked the VE to consider a hypothetical individual with a GED, born in 1966 and with past work as a press operator and a waitress, who is limited to doing work that is simple, routine and repetitive and is

> [A]ble to tolerate superficial contact with co-workers and supervisors  but should not need to deal with the general public.  Superficial contact would not include confrontation or negotiation.  Brief exchange of information would be acceptable. A co-worker could leave off materials, for example, (sic) pick them up.  But the person should not have to work together with someone in tandem to get the work done.  (TR 367).

The VE testified that Plaintiff's prior work as a press operator would fall within that hypothetical. (TR 367).

The ALJ asked the VE to further consider the individual as limited to lifting, carrying, pushing and pulling ten pounds frequently and twenty pounds occasionally and should be able to sit and stand at will.  (TR 368).  The VE testified that an individual limited to lifting, carrying, pushing and pulling no more than ten pounds frequently and twenty pounds occasionally would still be able to perform the press operator job, but if the person needed to sit or stand at will the press operator job would be precluded.  (TR 367).  The VE testified that the jobs available in the regional or national economy for such an individual include assembly positions (9,000 in the lower peninsula of Michigan ), machine operator (5,600), inspector (4,700), administrative support (3,200), stock clerks (3,100) and file clerks (3,000).  (TR 368).  The VE further confirmed that all of these jobs are light in exertion, simple and routine, but an individual must be able to perform the job eight hours a day, five days per week or an equivalent work schedule and employers will generally allow one

unexcused absence per month.  (TR 368). The VE testified that her testimony is consistent with the

Dictionary of Occupational Titles (DOT).  (TR 368).

## IV.    ADMINISTRATIVE LAW JUDGE'S DETERMINATION

The ALJ found that although Plaintiff had not engaged in substantial gainful activity since

December 1, 1999, and suffered from bipolar disorder and panic disorders, all severe impairments,

she did not have an impairment or combination of impairments that meets or medically equals the

Listing of Impairments.  (TR 22-23).  The ALJ found that Plaintiff was not entirely credible and she

retained the ability to perform a limited range of work at all exertional levels.  (TR 23).   The ALJ

concluded that Plaintiff has the residual functional capacity to perform her past relevant work and

was not under a disability as defined in the Social Security Act.  (TR 23).

## V.    LAW AND ANALYSIS

### A.    Standard Of Review

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's

final decisions.  Judicial review of the Commissioner's decisions is limited to determining whether

his findings are supported by substantial evidence and whether he employed the proper legal

standards. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Commissioner*, 127 F.3d

525, 528 (6th Cir. 1997).  Substantial evidence is more than a scintilla but less than a preponderance;

it is "'such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion.'"  *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S.

197, 229 (1938)); *Walters*, 127 F.3d at 528.  It is not the function of this Court to try cases *de novo*,

resolve conflicts in the evidence or decide questions of credibility.  *See Brainard v. Sec'y of Health*

*and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th

Cir. 1984).

10

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *See Her v. Commissioner*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts").

### B.      Analysis

### 1.      *Scope of the Court's Review*

Plaintiff's Social Security disability determination was made in accordance with a five step sequential analysis. In the first four steps, Plaintiff was required to show that:

(1)      she was not presently engaged in substantial gainful employment; and

(2)      she suffered from a severe impairment; and

(3)      the impairment met or was medically equal to a "listed impairment;" or

(4)      she did not have the residual functional capacity to perform her relevant past work.

*See* 20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f) (2009). If Plaintiff's impairments prevented her from doing her past work, the Commissioner, at step five, would consider her residual functional capacity ("RFC"), age, education and past work experience to determine if she could perform other work. If she could not, she would be deemed disabled. *See id.* §§ 404.1520(g), 416.920(g). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391. To meet this burden, the

11

Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health and Human Servs.,* 820 F.2d 777, 779 (6th Cir. 1987). This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question, "but only 'if the question accurately portrays [the claimant's] individual physical and mental impairments.'" *Id.* (citations omitted).

Plaintiff's sole argument is that substantial evidence does not support the ALJ's step four finding that Plaintiff can perform her past relevant work because the ALJ presented an inaccurate hypothetical question to the VE, which did not adequately describe Plaintiff's moderate limitations in concentration, persistence and pace. (Docket no. 8).

## 2.    *Whether Substantial Evidence Supports the ALJ's Step Four Finding*

The ALJ found that Plaintiff has the RFC to perform work "at all levels of exertion that is simple, routine, and repetitive. She is able to tolerate superficial contact with co-workers and supervisors, but cannot perform work that involves interacting with the general public, or that involves confrontation or negotiation." Plaintiff argues that the ALJ's limitation to "simple, routine and repetitive" work and the hypothetical question to the VE are not sufficient to describe Plaintiff's moderate limitations in concentration, persistence and pace. This issue relates to Plaintiff's mental impairments.

The Commissioner has prescribed rules for evaluating mental impairments. *See* 20 C.F.R. §§ 404.1520a, 416.920a. The Commissioner first determines whether there is a medically determinable mental disorder specified in one of nine diagnostic categories. *See id.*; 20 C.F.R. Pt. 404. Subpt. P, App. 1 § 12.00A. Thereafter, the Commissioner measures the severity of a mental disorder in terms of functional restrictions, known as the "B" criteria, by determining the frequency and intensity of the deficits.

12

The "B" criteria require an evaluation in four areas with a relative rating for each area. *See* 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3). The Commissioner must evaluate limitations in activities of daily living, social functioning and concentration, persistence, or pace and rate those on a five-point scale ranging between none, mild, moderate, marked, and extreme. The fourth area is deterioration or decompensation in work or work-like settings and calls for a rating of never, one or two, three, and four or more. "The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity." 20 C.F.R. §§ 404.1520a(c)(4), 416.920a(c)(4).

In evaluating Plaintiff's mental impairments, the ALJ concluded that Plaintiff is mildly limited in activities of daily living and ability to maintain social function, moderately impaired in maintaining concentration, persistence and pace and has no documented episodes of extended decompensation. (Docket no. 23). As an initial matter, there is no challenge to this finding and it is supported by substantial evidence in the record, including Dr. Dundon's Psychiatric Review Technique and Mental Residual Functional Capacity Assessment. (TR 234-253). The Court further notes that Plaintiff has not challenged the ALJ's credibility determination. Plaintiff argues that the ALJ's limitation in the hypothetical question to work that is "simple, routine, and repetitive," does not adequately encompass deficiencies in concentration. (Docket no. 8).

First, to the extent that the ALJ did not include the language that Plaintiff is "moderately impaired in maintaining concentration, persistence and pace" in the RFC or the hypothetical question to the VE, this is not error. This is not a basis for remand if the hypothetical question to the VE "adequately describes that claimant's limitations arising from a mental impairment." *See Edwards v. Barnhart*, 383 F. Supp. 2d 920, 929-30 (E.D. Mich. 2005) (citing *Smith v. Halter*, 307 F.3d 377 (6th Cir. 2001)).

13

Plaintiff argues that the ALJ failed to address Dr. Dundon's Mental RFC Assessment form and Psychiatric Review Technique form wherein he opined that Plaintiff had moderate limitations in the ability to understand and remember detailed instructions, carry out detailed instructions and maintain attention and concentration for extended periods and concluded that Plaintiff has moderate difficulties in maintaining concentration, persistence and pace. (TR 234-51). Contrary to Plaintiff's argument, the ALJ considered Dr. Dundon's opinions and specifically noted that the medical consultant "concluded that the claimant had the residual functional capacity for unskilled work." (TR 24). The ALJ went on to note that the consultant/reviewer "did not have the benefit of more recent evidence or of the testimony." (TR 24). Dr. Dundon, however, ultimately concluded that Plaintiff "could not understand/remember/carry out complex/technical instructions on a sustained basis," "could not do complex/technical tasks," but "[r]etains ability to do simple tasks on a sustained basis." (TR 250). The ALJ's findings with respect to Plaintiff's limitations are consistent with Dr. Dundon's opinions, including Dr. Dundon's conclusion that Plaintiff has moderate difficulties in maintaining concentration, persistence and pace. (TR 244). Dr. Dundon's notes explain that the effect of Plaintiff's moderate limitations was on her ability to perform complex and/or technical instructions on a sustained basis. The ALJ's RFC and the hypothetical question to the VE limit Plaintiff to performing simple, routine and repetitive tasks and in this instance, the ALJ's limitation to "simple" tasks addresses Dr. Dundon's explanation for Plaintiff's limitations. The ALJ's considered Dr. Dundon's opinion and it supports the ALJ's findings. (Docket no. 8).

Next, Plaintiff attempts to quantify "moderate" as the equivalent to "often" under the prior regulations. Plaintiff further extrapolates to assign a twenty percent deficiency to a "moderate" impairment in the ability to maintain concentration, persistence and pace and concludes that she would not be able to "maintain concentration, persistence or pace at a rate of approximately one day

14

per week." Plaintiff argues that "[t]hese deficiencies clearly would fall outside the normal limits allowed of one absence per month." The problem with this analogy is that Plaintiff does not provide record evidence that supports that allegation that the "moderate" limitation will manifest in this manner, specifically, an inability to work five days per week with only one absence per month, especially where the record supports a finding that the moderate limitation is addressed by a limitation to "simple, routing and repetitive" work, as it does here.

In fact, Dr. Dundon's assessment specifically concludes that Plaintiff could not follow complex and/or technical instructions on a sustained basis or perform complex and/or technical tasks, but she can "do simple tasks on a sustained basis." (TR 250). There is simply no evidence in the record to the contrary which would establish any other resulting limitations from Plaintiff's moderate impairments in maintaining concentration, persistence or pace. The ALJ's RFC and the limitation to simple, routine and repetitive tasks, which was included in the hypothetical question to the VE, are supported by substantial evidence.

**3.** ***Whether the ALJ's Hypothetical Question To The VE Is Supported By Substantial Evidence.***

In a hypothetical question posed to the VE, an ALJ is required to incorporate only those limitations which he finds credible and supported by the record. *See Casey v. Sec'y of Health and Human Servs.,* 987 F.2d 1230, 1235 (6th Cir. 1993). As set forth above, the ALJ's RFC was supported by substantial evidence and in this instance, based on the evidence in the record, his finding that Plaintiff was limited to simple, routine and repetitive jobs was supported by the record and adequately described her moderate limitations in maintaining concentration, persistence and pace. Therefore, the ALJ properly relied on the VE's responsive testimony that Plaintiff could perform her past relevant work as a press operator and her findings are supported by substantial

15

evidence.

## VI.     CONCLUSION

The ALJ's opinion is supported by substantial evidence.  Defendant's Motion for Summary Judgment (docket no. 11) should be granted, that of Plaintiff (docket no. 8) denied and the instant complaint dismissed.

## REVIEW OF REPORT AND RECOMMENDATION

Either party to this action may object to and seek review of this Report and Recommendation, but must act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Rule 72.1(d)(2) of the *Local Rules of the United States District Court for the Eastern District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated:  July 22, 2009              s/ Mona K. Majzoub                                   
                                   MONA K. MAJZOUB
                                   UNITED STATES MAGISTRATE JUDGE

**PROOF OF SERVICE**

I hereby certify that a copy of this Report and Recommendation was served upon Counsel of Record on this date.

Dated:  July 22, 2009                    s/ Mona K. Majzoub
                                         Courtroom Deputy

17